FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 17, 2014

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

Case No. 13-cv-388-JPH

SONYA L. SEVERSON,

               Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.

ORDER ON MOTION FOR
SUMMARY JUDGMENT

**Before the Court** are cross-motions for summary judgment. ECF No. 14, 15. The motions were heard without oral argument. Plaintiff (Severson) is represented by Gary R. Penar. Defendant (Commissioner) is represented by Assistant United States Attorney Pamela De Rusha and Special Assistant United States Attorney Christopher John Brackett. The parties consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the court **grants plaintiff's** motion for summary judgment, ECF No. 14.

## I. JURISDICTION

Severson applied for disability insurance benefits (DIB) and supplemental security income (SSI) benefits in October 2010 and June 2011, respectively. She

~ 1

alleges she has been disabled since April 17, 2009 (Tr. 150-52, 153-60). Her applications were denied initially and again denied on reconsideration (Tr. 97-100, 102-04, 109-110, 112-13).  Following her timely request, Severson appeared at a hearing on June 7, 2012 before Administrative Law Judge (ALJ) James W. Sherry. Severson appeared with counsel. A vocational expert and  Plaintiff's spouse, Ricky Severson, also participated  (Tr. 33-63).

On July 12, 2012, the ALJ issued an unfavorable decision (Tr. 12-25). Following Severson's timely request for review, the Appeals Council denied  review on September 20, 2013 (Tr. 1-5). The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. 42 U.S.C. § 405(h). Severson filed a timely appeal on November 18, 2012. The matter is before the Court pursuant to 42 U.S.C. § 405(g). ECF No. 1, 5.

## II. SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering

plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing

work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### III. STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is

1    supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.

2    1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's]

3    determination that a plaintiff is not disabled will be upheld if the findings of fact are

4    supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

5    1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla,

6    *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a

7    preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

8    Substantial evidence "means such evidence as a reasonable mind might accept as

9    adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

10   (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner]

11   may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*,

12   348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a

13   whole, not just the evidence supporting the decision of the Commissioner. *Weetman

14   v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525,

15   526 (9th Cir. 1980)).

16        It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.

17   *Richardson*, 402 U.S. at 400. If evidence supports more than one rational

18   interpretation, the Court may not substitute its judgment for that of the

19   Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th

20   Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be

set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

Plaintiff has the burden of showing that drug and alcohol addiction (DAA) is not a contributing factor material to disability. *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(J); *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed the analysis to determine whether substance abuse is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled, then the ALJ must proceed to determine if the claimant would be disabled if he or she stopped using alcohol or drugs.

## IV. STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the decision below and the parties' briefs. They are only briefly summarized here and throughout this order as necessary to explain the Court's decision.

Severson was 49 years old at the hearing. She earned a GED and has worked as a banquet manager, nursing aide and office helper (Tr. 36-37, 56). She alleges she suffered a traumatic brain injury (TBI) caused by a car accident in April 2009, and can no longer work as a result. She alleges she suffers mental limitations, headaches, back, neck and knee pain (Tr. 42, 172).

## V. THE ALJ'S FINDINGS

The ALJ found Severson was insured through December 31, 2012  (Tr. 12, 14), meaning she must establish disability on or before that date to be eligible for disability insurance benefits.

At step one, the ALJ found Severson did not work at substantial gainful activity levels after the alleged onset date of April 17, 2009  (Tr. 14).

At steps two and three, the ALJ found Severson suffers from cervical degenerative spondylosis; lumbar degenerative disc disease; post-concussive syndrome; cognitive disorder NOS; cluster B features; affective disorder and anxiety disorder, impairments that are severe but do not meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ  considered

impairments listed under section 1.00 (Musculoskeletal System) and 12.00 (Mental Disorders). He concluded the diagnostic criteria were not met  (Tr. 14, 17-18).

The ALJ found Severson less than credible. He assessed an RFC for a range of medium work (Tr. 19, 20).

At step four, the ALJ relied on the VE's testimony and found Severson is able to perform her past relevant work as an office helper (Tr. 23), meaning she is not disabled as defined by the Act.  Alternatively, at step five, again relying on the VE, the ALJ found Severson can do other jobs such as vehicle cleaner, laundry worker and office cleaner (Tr. 24-25).

## VI. ISSUES

Severson alleges the ALJ erred when he weighed the evidence, particularly at step two with respect to mental impairments and when he assessed her RFC. ECF No. 14 at 7-20. The Commissioner responds that the ALJ's findings are factually supported and free of harmful legal error. She asks the court to affirm. ECF No. 15 at 2.

## VII. DISCUSSION

### A. Credibility

Severson does not address the ALJ's credibility assessment, making it a verity on appeal. She alleges error at step two and in the ALJ's assessment of conflicting medical evidence. The court addresses credibility because the ALJ considered it

1    when he weighed the evidence.

2        When presented with conflicting medical opinions, the ALJ must determine

3    credibility and resolve the conflict. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d

4    1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's credibility findings must be

5    supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th

6    Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for

7    rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*,

8    81 F.3d 821, 834 (9th Cir. 1995).

9        On this record, the ALJ's reasons are not clear and convincing.

10        The ALJ relied on inconsistencies between statements and objective medical

11    evidence (including four positive drug tests despite denying use of illegal drugs),

12    failing to follow a treating doctor's recommendations, and improvement with

13    medication and following nerve block injections  (Tr. 20-22).

14        Generally this would suffice. Although lack of medical evidence cannot form

15    the sole basis for discounting pain testimony, it is a factor the ALJ can consider

16    when analyzing credibility. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

17    The ALJ is permitted to consider inconsistent statements and activities inconsistent

18    with allegedly severe limitations. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir.

19    2002). An unexplained or inadequately explained failure to follow prescribed

20    medical treatment is properly considered. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.

1    1989).

2        Here, however, the record of mental problems and drug use complicates the

3    picture. Because the ALJ erred in weighing the medical evidence (see below) errors

4    in the credibility analysis should be addressed after remand.

5        Severson's discharge from counseling for poor attendance does not, in and of

6    itself, render her less than credible. *See Ngyuyen v. Chater*, 100 F.3d 1462, 1465 (9th

7    Cir. 1996)("Appellant may have failed to seek psychiatric treatment for his mental

8    condition, but it is a questionable practice to chastise one with a mental impairment

9    for failing the exercise of poor judgment in seeking rehabilitation.")(citation

10   omitted). In addition, when questioned about it she testified her brother was

11   supposed to be helping her but he "did a lot of things that weren't right," indicating

12   the reason for poor attendance may be reasonably explained. Elsewhere the record

13   indicates her brother lived with Severson and her husband at times and allegedly

14   stole medication and money from her  (Tr. 607, 628).

15       In March 2011 examining psychologist Everhart notes Severson "denies any

16   history of psychiatric hospitalization. Medical records appear to indicate

17   [psychiatric] hospitalization at Sacred Heart Medical Center" (Tr. 586). Dr. Everhart

18   is correct. Severson was psychiatrically hospitalized, in December 2010 (Tr. 531,

19   542, 629). This is an inconsistency that is the opposite of exaggeration and appears

20   to enhance rather than detract from Severson's credibility.

1    Other inconsistencies tend to impeach credibility, but these are not mentioned

2    by the ALJ. Severson has indicated she stopped working at her last job (as the owner

3    of a company providing hospice care)  because of her condition  (Tr. 473, 597), but

4    also said a coworker "stole the company from me" (Tr. 545, 754). The substantial

5    evidence of substance abuse makes it difficult to assess credibility and the medical

6    evidence.

7    *DAA*

8    Severson was in a car accident in April 2009, allegedly when physical and

9    mental problems arose. At the time of the accident, Severson admitted using

10   marijuana and alcohol socially, but not recently (Tr. 225, 358, 445).

11   In August 2010 treating Dr. Donald Crisp, D.O., was concerned with

12   progressive functional disability "due to multiple influences of varying severity, "

13   including the overlap of physical injuries, head injury and resulting cognitive and

14   emotional distress, failing support system at home, limited resources, complications

15   of polypharmacy and possible drug side effects. "It appears she's exhausted her

16   coping ability; she is failing to make improvements, and it seems her identity now

17   hinges on her injuries. Her prognosis is complicated by guarding" and adoption of

18   this sick role; "I do not suspect she's malingering but I am concerned that she's

19   totally exhausted. Perhaps there are elements of conversion disorder."  (Tr. 460,

20   600).

On September 23, 2010 Severson came to the ER complaining of a seizure earlier in the day, a headache and "pain all over." She tested positive for methamphetamines and did not deny using. She was advised of the potential that methamphetamine is a significant contributing factor to some of her symptoms  (Tr. 424-25, 541). On September 28, 2010 an ambulance brought Severson to the ER. She reported she had three seizures that day; with one, she experienced incontinence. However, when "EMS arrived, there was no evidence of incontinence." (Tr. 489-90, repeated at Tr. 540-41).

Earlier the same day, September 28, 2010, Dr. Crisp notes "we are aware of suspected overmedication with narcotics and problematic results including amnesic period[s]." The following day Dr. Crisp points out Severson has been unreasonably demanding with staff. He listened to several phone messages he describes as "obscure." He recommended Severson find a new primary care physician (Tr. 452).

In the ER on December 21 and 26, 2010, Severson denied using drugs. Both times she tested positive for amphetamines and methamphetamines. She said the result was positive because "people in the house were smoking meth." She is noted to be pale, disheveled, with slurred and disjointed speech. She is very disorganized and unable to stay on track (Tr. 530-31, 533-34, 536-37, 539, 547). December 28, 2010, while psychiatrically hospitalized, she left the hospital on a day pass with her husband. When she returned she again tested positive for methamphetamines and

1   again denied drug use. When informed she needed treatment for methamphetamine

2   abuse, Severson asked to be discharged from the hospital (Tr. 542, 544).

3        At the hearing she testified she had no problems with drugs or alcohol in the

4   past. She was reminded of "a reference in the record to a positive tox screen for

5   methamphetamine" and was asked if she ever used it. She said no (Tr. 50-51).

6        *B. Medical opinions*

7        Severson alleges the ALJ failed to properly credit the opinions of

8   psychologists Daisley and Everhart. She alleges ALJ Sherry erred by rejecting their

9   opinions in favor of agency reviewing psychologists. ECF No. 14 at 13-17. The

10  Commissioner responds that there was no error. ECF No. 15 at 9-15.

11       Severson first saw Winifred Daisley, Ph.D., on April 27, 2010, about a year

12  after onset (Tr. 514). Dr. Daisley performed an evaluation that included testing, and

13  issued a report June 2, 2010. Daisley recommended Severson obtain a brain MRI

14  and an EEG [both of which were later obtained and were normal]. He recommended

15  consulting a pain management specialist, and obtaining both a spinal consultation

16  and an occupational therapy evaluation.

17       Dr. Daisley's testing showed severely impaired fine motor speed and

18  coordination in both hands, as well as problems with memory and other mental and

19  emotional limitations. Daisley opined Severson was not currently able to work due

20  to physical, cognitive and emotional difficulties and assessed a GAF of 50. Daisley

1    recommended applying for disability, and in July 2010 urged Severson to consider

2    counseling and asked her to follow up in one year to monitor her cognitive condition

3    (Tr. 477-83, repeated at Tr. 515-23). A follow up evaluation was performed in July

4    2011. Testing showed slight improvement in some areas but impaired functioning as

5    well. Dr. Daisley supported permanent disability status (Tr. 621-26).

6        The ALJ gave Daisley's opinion little weight noting first that an opinion about

7    a claimant's disability is an administrative finding reserved to the Commissioner.

8    This is correct, but standing alone it is not a specific and legitimate reason to

9    discount an examining  source's opinion.

10       The ALJ's second reason for discounting Dr. Daisley's opinion is that much

11   of it appears based on Severson's discredited allegations. The Commissioner points

12   out that some of Dr. Daisley's procedures depended on Severson's self-description,

13   such as the Beck depression and anxiety inventories. And, the Commissioner

14   continues, Dr. Daisley personally observed "several normal findings, such as normal

15   orientation and no impairment in understanding instructions," "generally normal

16   speech," and the ability to self-correct mistakes. ECF No. 15 at 14-15, citing Tr. 23,

17   478-79; 621. Finally, the Commissioner asserts the ALJ's RFC need only be

18   consistent with medical opinions. ECF No. 15 at 15, citing *Turner v. Comm'r of Soc.*

19   *Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

20       The ALJ's reasoning is not supported by the record. Dr. Daisley performed

~ 14

numerous objective tests that did not depend on self-description and found numerous abnormal findings. The RFC is not consistent with this or most other medical opinions.

Joyce Everhart, Ph.D., reviewed medical records and administered testing as part of her evaluation. In her March 1, 2011 report Dr. Everhart notes pace is somewhat slow for fine motor functioning as Severson completes Trails A and B. Severson presents as mildly depressed, tearful, angry and anxious. Severson denied the use of drugs as an adult, but this is contradicted by medical records showing drug screens positive for methamphetamines. She also denied any history of psychiatric hospitalization but, as noted, records indicate such hospitalization at Sacred Heart Medical Center  (*see e.g*. Tr. 425, 435-36).  She presents as exhausted in facial expression, body posture and voice tone near the end of consultative examination. Interestingly, Dr. Everhart also assessed a current GAF of 50, about ten months after Dr. Daisley's evaluation.  Although the Commissioner accurately observes the GAF scale is dropped in the newest edition of the DSM-V, it is striking that both examiners assessed current serious symptoms or functional impairment. Dr. Everhart opines Severson needs help to manage funds in her own best interests. The prognosis is guarded (Tr. 586-92).

The ALJ purports to give "[s]ome weight to great weight" to Dr. Everhart's opinion (Tr. 23), but this is inaccurate.

1    Treating sources at St. Luke's Rehabilitation Institute opined in January and

2    February 2011 that there is a "significant cognitive/emotional component" to

3    Severson's    difficulties.    She    was    undergoing    physical    therapy,    eye

4    coordination/visual tracking exercises, training in memory compensation strategies

5    related to TBI and other services (Tr. 639, 641, 643, 645, 648, 676).

6    Severson is correct that the opinions of treating and examining doctors are

7    entitled to greater weight than non-examining reviewing doctors. *Lester v. Chater*,

8    81 F.3d 821, 831 (9th Cir. 1995).  Here, the ALJ erred when he gave greater weight

9    to the opinions of reviewing doctors and failed to give specific and legitimate

10   reasons for essentially rejecting the opinions of these two examining professionals.

11       *C. Evidence considered by Appeals Council*

12   Severson alleges this court should consider Psychiatrist Melody Stupey,

13   M.D.'s assessment provided to the Appeals Council after the ALJ's decision. In

14   support, she cites *Brewes v. Commissioner*, 682 F.3d 1157, 1159 (9th Cir. 2012).

15   ECF No. 14 at 16, referring to Tr. 753-57.  Because the case is being remanded,

16   the ALJ should consider this evidence.

17       *D. Step two*

18   Severson alleges the ALJ erred when he failed to include pain and

19   somatoform disorders as severe impairments at step two. ECF No. 14 at 10-11.  As

20

noted, treating Dr. Crisp suspected conversion disorder (Tr. 460). Dr. Everhart diagnosed, in part, pain disorder and did not find evidence of malingering (Tr. 591).

The Court notes the record shows less than a month after the ALJ's decision a therapist indicates Severson's speech is slurred and she speaks with a noted accent. Severson's mother tells the therapist "they both [Severson and her spouse] just need to go to detox … they need to go to rehab." (Tr. 792-93, 795). About a month later Severson came to a counseling appointment without shoes (Tr. 800).

In August 2010 Dr. Crisp notes slurred speech suggestive of fatigue  (Tr. 454). Another treating source in December 2010 and January 2011 notes attention, memory and organization sequencing are all impaired, based on informal testing, and "mild TBI" is assessed (Tr. 581, 585).   Treating   sources   have   described Severson as  "irate, paranoid appearing" (Tr. 457); "very escalated and tangential in her thought process" (Tr. 779); "rambling conversation, deviates from topic," (Tr. 536)  and "tearful, calm, screaming" (Tr. 531).

After remand it would be helpful if the ALJ obtained expert testimony to assess these impairments and whether they result in any additional limitations. Given the pervasive record of DAA such an expert should also discuss the effects of DAA if Severson is found disabled.

*E. RFC*

Severson alleges the residual functional capacity assessment and vocational

hypothetical should have included limitations caused by pain, somatoform and personality disorders. ECF No. 14 at 18-19. The ALJ will need to assess this on remand with the assistance of expert testimony.

The ALJ's determinations are unsupported by the record and contain harmful legal error.

## VIII. CONCLUSION

After review the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error.

**IT IS ORDERED:**

Plaintiff's motion for summary judgment, **ECF No. 14,** is **granted.**

Defendant's motion for summary judgment, ECF No. 15, is denied.

The case is **reversed and remanded  pursuant to sentence four** for further administrative proceedings.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of plaintiff and **CLOSE** the file.

DATED this 17th day of October, 2014.

_S/ James P. Hutton_

JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

~ 18